Commitment of Donald Podkulski Now, are two lawyers going to be arguing? No, Your Honor. All right. The whole agreement is the settlement of the lawsuit. You know, we discussed it last week. It should be a lot easier now. Of course. Absolutely. All right. So, would the two attorneys that are going to argue this morning step up to the podium and identify yourselves by name? My name is Michael Johnson. I'm from Chicago-Kent College of Law, and I'm appearing on behalf of Mr. Podkulski and Mr. Butler. All right. Good morning. Good morning, Your Honor. Brian McLeish on behalf of the people from the Attorney General's Office. Good morning, Mr. McLeish. So, each of you will have about 15 minutes to argue, and from that, Mr. Johnson, you may save out some time for rebuttal. All right? So, you may step up and begin your argument. May it please the Court, Counsel, I'd like to reserve three minutes for rebuttal. Certainly. The 14th Amendment to the United States Constitution prohibits the continued commitment of persons who are civilly committed when the reason for that commitment no longer exists. May we stop you for a minute? What are you trying to accomplish here? We're trying to accomplish a procedure that we believe the statute provides for to ensure that Mr. Podkulski and Mr. Butler have fair hearings in the future because we saw in the record that the State was taking this position that they needed to have a judgment showing that there was no probable cause based on each of those years and each of the facts that occurred over those years so that they could use that judgment in the future to prevent Mr. Podkulski and Mr. Butler. How would they be able to use that judgment in the future to do that? Well, when we look at the Stanbridge decision, we know that under the prior version of the statute, the question at the annual reexamination proceeding was that had things changed since the initial commitment, which was after a trial. And then after, and Stanbridge was careful to say, you know, the statute's been amended, and then the statute provides for review based on this annual period. So the way that they would and that they're asking to use it would be to say, we have a judgment showing that everything that happened in 2015, there was no probable cause to believe that Mr. Podkulski and Mr. Butler should be found no longer sexually violent. If I could interrupt you, going along with Justice Gordon's question. In your prayer, you just asked us to vacate the circuit court's rulings. Correct. So are you now asking this court to send it back for re-hearings? And if so, on what cases? No, we're not asking to send it back for a re-hearing because we think that the remedy, based on a waiver, should be that the matter is simply taken off call and everything that happened in 2015, 2016, 2017 could be considered at the appropriate time. Well, why do you think that it can't be? Even though there was a change in the statute, what would suggest that, let's say, for example, next year a psychologist opines that either one of these petitioners or respondents is no longer a danger such that he could be conditionally released. Now what would suggest to us that the court can't consider everything? So certainly we have the decision from In re Rendon from 2017 where this court held that all the facts and circumstances of the respondent's history could be considered. And that's not from this panel, but we're aware of that decision. So that was interpreting the change, wasn't it? It was. However, what the State is seeking is a judgment saying that those facts do not establish probable cause, and then in the future they'll be saying, well, look, you can't essentially cutting up the progress, cutting up the changes into pieces and saying each one of those pieces there was no probable cause based on the facts, based on the treatment, based on the changes in psychology. I'm sorry, Mr. Johnson, wouldn't that be like an advisory opinion? If we were to tell you now or suggest that that interpretation is wrong, that the court can always consider all these other things? Well, I think the advisory, you know, we're getting into that realm because of what the State was asking for in the trial court. The State was asking for an advisory opinion in the trial court. Well, how so? The judge said he was of the opinion that he needed to make a determination one way or the other as to whether or not there was no probable cause to believe that both of your clients were no longer a sexually violent person. Each one was no longer. Right. So? Under Section 40 of the statute, the commitment is until the person is no longer a sexually violent person. Correct. So there does not need to be annual. Okay, but there has to be an annual examination, right? Yes. But there does not need to be an annual redetermination or renewal of the commitment order. When you look in comparison to the Mental Health and Developmental Disabilities Code, those orders for commitment are time limited to 90 days, 180 days. And if the State doesn't file a petition within that time to renew the commitment, then that person would have to be released and they would have to proceed on a whole new petition to commit them. But this is a different statute. Yes, it is. One of the questions I have is that there's a waiver form in the record, and it was, I believe, given to Mr. Podlowski. It says, Notice of Right to Petition for Discharge. And then it has the waiver of right to petition, and it says, By putting my initials on each paragraph of this form and signing this waiver form, I know that, and then there's one, two, three, four, five, six different, you're familiar with this, right? Yes. All right. Now, this is not signed for either of the respondents.  That's correct. Yes. Okay. Now, isn't this what the statute means when it says the respondent or the petitioner moving for discharge has to affirmatively waive? No. All right. The form is one way that they can affirmatively waive their right to petition for discharge. But if we read the statute as limiting it, that's the only way that they could affirmatively waive their right to discharge. That would prevent them from first knowing what the examiner's opinion is before they make that determination, and it would prevent them from consulting with an attorney, their attorney, before they make a determination on whether to waive that right. Okay. Where in the statute does it specifically state that? Which part? The part that you mentioned about that doesn't necessarily mean that they're affirmatively waiving their right. If they don't submit the form. I understood you correctly. The statute, Section 65B1, provides for at the time of an interview by the examiner with the committed person that they shall present them with a waiver of rights, and then the secretary of DHS shall forward the notice and the waiver form to the court. And then if the person does not affirmatively waive the right to petition, the court shall set a probable cause here. So what I'm saying, I guess, is that the idea of a waiver has to be knowing and intelligent. So they need to know what they're waiving. They need to know what the examiner's opinion is, and they need to be able to consult with their attorney because under the statute they're not even entitled to be present for these hearings. Now, the trial court is. Well, they're not entitled to be present for the hearings. Right. But there's nothing that suggests that a waiver and what is the adjective that's used? Affirmative? Yes, affirmative. There's nothing in the statute that suggests that they shouldn't be brought into court to affirmatively waive their rights. Is there? They should not be? Yeah. I mean, if they're going to affirmatively waive a petition to discharge, there's nothing in the statute that says they can't be there. It's only when there's either a hearing or a review of the documents. So perhaps the procedure that should be followed, I think I understand your argument that you can't really waive this until you've had a chance to fully understand your rights, and perhaps it should be done with counsel. So shouldn't the person be brought before the court, perhaps, to affirmatively acknowledge this waiver of a petition for discharge? Certainly, that would be, I think, one way of doing it. In this case, there was no objection to filing a written waiver. The trial court accepted the written waiver and acknowledged that that written waiver and that they had waived the right to petition for discharge. There's been no dispute by the attorney general in the trial court or in the appeal that they did indeed waive affirmatively their right to petition for discharge. Well, we do have, and then for Mr. Podlosky, we do have an actual filed waiver, right? Yes. It says, I, Donald Podlosky, after conferring with my attorney, do hereby waive my right to petition for discharge pursuant to 207-65b-1. And then it says, I understand that by executing this waiver, there will be no hearing. You know, he signed his last name. I think that's his signature. It appears that he doesn't use a first initial or anything. I mean, is this an affirmative waiver? It is. It is? It was not. What do we base that on? He wasn't in court. I mean, this is just a signed piece of paper. Do we base it on the lawyer's acknowledgment? Well, certainly, if there had been a question as to whether this was, in fact, his signature, whether this was, in fact, something that had been explained to him, then that could have been raised in the trial court, and we could have brought him in the court, and he could have said whatever and answered any questions that the court might have, just like if somebody's waiving their right to a jury trial or, you know, waiving their right to testify. But none of that happened. Okay. And I don't want to, you know, trick you here, but the fact that he did submit this waiver, has he forfeited any other, you know, procedures as far as being brought into court? Well, certainly not if there was a question as to the voluntary and knowing waiver. Yeah. The word is affirmative. I mean, I don't know what we haven't really talked about what that means under the statute, but it's certainly not the same language as voluntary and knowing, but I would think it should be. But they've used the words affirmatively. I don't know that this, you know, this kind of paper is affirmatively, you know, acknowledging these other things. And I have another question regarding the waiver. All right. Pursuant to the statute, well, let me ask you this. Well, counsel was present when Mr. Podolsky signed this, right? Yes. Okay. Was the psychologist present? No. Okay. So who's making this determination? Is it the lawyer or is it the psychologist when he signs this waiver? Well, Mr. Podolsky signed the waiver. No, I understand that. Well, my question is, because the statute seems to imply the way it's laid out that, you know, you go to the psychologist, the psychologist makes the determination, right? And then counsel, I mean, not counsel, the individual has an opportunity to consult with his lawyer. But it appears from the statute that the waiver should be signed in conjunction with the examination. Not this appears that there was an examination and later on when your client met with counsel, then they determined to sign the waiver. Yes. And I think in reading the statute, it does contemplate that the form will be provided at the time of the interview. Right. But at the time of the interview, that person doesn't know what the examiner's opinion is. So that's my problem with this. Then it seems like the lawyer is making the assessment, not the examiner, when the form is being signed. The lawyer is making the assessment of, that's the part I'm missing. What is the lawyer making the assessment of? Okay, so it appears that pursuant to the statute, the examiner is with the client at that point in time, makes a determination one way or another, right? And then the individual signs the waiver form. Here what happens is it appears that there was an examination, right? Just a time lapse. Now your client meets with counsel and then counsel says, okay, well let's sign the waiver form. But there was no psychologist present. That's correct. So this waiver form isn't in compliance with the statute then? You know, I don't agree with that. Why? Because. That's my problem with this. Sure. Okay. Because the presence of the examiner during a waiver of rights is not strictly required by the statute and should not be read into the statute because that would preclude the person from actually making and knowing an intelligent and affirmative waiver because they would not know what they were giving up, which we have to know, otherwise that's forfeiture. If it's forfeiture, that would be something that you gave up by not knowing about it unintentionally, whereas the case law distinguishes waiver as something that's a knowing and voluntary relinquishment of your rights. Known right. Mr. Johnson, in this case, as far as both respondents, you're not contesting that there at this time, at the time of this waiver on July 6th, okay, you're not contesting, or are you, that these respondents, when the court found that there was no probable cause to believe that they were no longer sexually dangerous persons, you're not contesting that, are you? Isn't that why a person would waive a hearing? Because they are conceding that at the particular time, there's no probable cause to believe that they are no longer a sexually dangerous person. And I think that's kind of where we draw a distinction between the concession and the not challenging it. Okay. We're not challenging it, and therefore, going on with the further proceedings, there was no justiciable matter. Okay. We're not conceding. How is there a justiciable matter here, then? You're not contesting actually what the court found. The court entered its finding. It said, I have to do this. I'm going to enter a finding. And you're not challenging that that finding was wrong, or incorrect, rather. Well, we are. You are. The judgment was wrong to enter. The judgment ought not to have been entered. Because he waived his right to a petition for discharge? Correct. Because under the statute, the hearing is only to be held if the person does not affirmatively waive their right to petition for discharge. Okay. And that's, I think, the meaning of the affirmative waiver, is it distinguishes between the circumstance where the person does nothing, in which case the Rendon decision said that they have a petition for discharge filed by operation of law, and somebody who comes in and says, no, I'm not going to petition for discharge, I'm just going to go on until next year and there's another reexamination. Well, I think we're all struggling with what is the harm here, what is the prejudice, what is the error. What relief, if we gave you relief, what will it do? The relief would preserve all the facts, all the changes that happened in the 2015 through 2017 time period for use in future proceedings without being tainted by a judgment that says that those facts weren't good enough. But you're asking us to vacate here. See, that's the rub. You're asking us to vacate the circuit court's order. But are you asking us to vacate the last order that was entered, or are you asking us to vacate the previous orders that were entered where these matters were continued? Because then that basically makes all of these other prior reexamination void. So if you could answer my first question. Are you asking us to vacate the last order that was entered by the circuit court, or are you asking us to vacate the prior orders as well? We're asking to vacate all of the orders that were entered on that day, which includes not just the most recent report and time period, but I believe the 2015 and 2016 time periods as well. Well, then, going back to Justice McBride's question, then where does that leave us with all these orders then? It leaves us with leaving intact those facts from those time periods that can be used in the future without having somebody come in and say, well, no, those facts aren't good enough, and cutting them up. Here's an argument for you, Mr. James. Now, I think I'm understanding that you're suggesting that when a respondent affirmatively waives, that that should be the end of it, and that later the Attorney General's Office prosecuting attorney cannot argue essentially that those previous findings, that they all support no order releasing someone. Right. Okay. But why couldn't someone, a smart lawyer, argue the same thing? For example, well, if it's before the jury, right, which the respondent's entitled to, Mr. Podkulski affirmatively waived that there was no probable cause to discharge him just last year. Why couldn't the lawyer argue that as well? Because he's not affirmatively waiving and agreeing that there's no probable cause, and that's, I think, again, the distinction between conceding that he's still a sexually violent person versus not contesting it. I mean, he's not filing a petition for discharge at this time. He's saying, I'll wait until next year to see if, you know, we'll get a little bit further. So you can argue to a jury that he wasn't conceding that, and then they're going to turn around and argue he affirmatively waived his right to a petition for discharge because he agreed that there was no probable cause that he was no longer sexually dangerous. Aren't we talking about arguments that would be made sometime in the future? Again, isn't this sort of like an advisory opinion? We are to a certain degree because that's what the state said they needed to do. They needed these judgments so that they could argue this in the future, and that's kind of what we're stuck with. Aren't they talking really about retroactively, not, you know, into the future, but retroactively? Wasn't that their argument before the circuit court? No. I think the way the transcript reads, we've cited on pages six and seven, is that they want to have these judgments entered so that they can rely on those judgments in a future proceeding to say that the facts from those years, the changes from those years weren't good enough. But isn't that just an argument about evidence in a hearing? I mean, wouldn't someone have to – don't you have to have testimony from experts, and won't the experts say that his condition has changed? He no longer suffers from, you know, paraphilia, not otherwise whatever, the one that people question whether it's even valid. You see what I'm saying? Aren't we talking about just arguments that would be made someday in the future? We are, because that's what the state relied on for saying that they needed this judgment. And if we look at the Stanbridge and Lieberman decision, those were critical factors to the Illinois Supreme Court's determination. And they said that, well, those expert opinions did not give probable cause for a change in circumstances since the trial. So those are critical elements to even getting to a jury. You have to get to the probable cause first. And the question before the jury is not limited to the most recent periodic reexamination. The question is just as a whole whether the person is still a sexually violent person. Sure. So both sides will have the opportunity to probe and explore and talk about the past, wouldn't they? They would. And that's why we should have the judgment vacated so that it's not giving this issue preclusive or claim preclusive effect to a judgment when they had no right to cross-examine the witness, no right to present witnesses. All they were entitled to do was present argument and reports of the parties at a probable cause hearing where there's no affirmative petition for discharge. I'm not sure I understand the difference between the two. So you're saying that there was no real hearing? That's correct. I mean, there was a hearing where the court, if you want to call it a hearing, where the court reviewed the reports, and that's sort of the hearing that's contemplated by the statute if there's no. . . So if we gave you another hearing, what would you do differently? No, we're not asking for a hearing. Well, I understand, but doesn't the Act really require one? No, not in the instance of affirmative waiver of the right to petition for discharge. The Act only requires a hearing if there's not an affirmative waiver or if there's a petition for discharge that's formally filed. What if we find that there's really no affirmative waiver here? That this was really, I mean, a piece of paper. . . What did the lawyer do? Stand in front of the judge? Or, I'm sorry, maybe it was you, Mr. Johnson. Did you stand in front of the judge and say, you know, Mr. Mikulski is at this time waiving his right to a petition for discharge? Yes, I did, and there was no challenge to that affirmative waiver, and there's been no challenge by the state on appeal either. Well, aren't you saying that this statute is unconstitutional? You know, that is a position that we have taken and certainly something that's kind of beyond the scope of the appeal, the constitutionality. I see it in your briefs, though. But I mean, it seems that you're arguing that this is a statute that's unconstitutional, that somehow it affects the rights of your client. That's something that would be contemplated certainly in the future, depending on how the court rules. You know, if they're able to cut up the progress the person has made, then that definitely gets away from what the constitution authorizes. But why should they be allowed to do that? I don't think there's anything in the statute that says that they get to cut it up and say, you know, there was no progress. I don't understand where that's coming from in the statute. Isn't that just simply an argument that they're going to make? And don't you get to argue that there has been progression coming, you know, from the first time that he was committed to where we are today? Don't you get to argue that too? Yes, but there's an argument that they're making that would be supported by the judgment. And the only time to challenge that judgment is now. We can't file a notice of appeal two years from now when they're actually using the judgment and say, hey, that judgment shouldn't have been entered. We have to do it now because we only had certain time to file the notice of appeal. All right. Let me ask you about, you said that the State has conceded that this was an affirmative waiver. Yes. Where would we pull that from the record? From the, no, I'm talking about from the State's appellate brief on page 2. Where is that from the record, though? From the record. Because, you know, you indicated that it was a waiver as to all matters. And then there was a misunderstanding whether or not you were in agreement with no probable cause, right? Right. And then when that got clarified, then they said, well, we're still trying to pursue with our motion because we feel that there is no probable cause here. So where is there in the record that it says that? That the Attorney General is not contesting that? Right. Certainly that the trial court accepted the waiver and found on page R, the report of proceedings at 321, found that you're waiving your right to petition for discharge into a hearing. If that's what you want to do, that's what you want to do. But the court still has the power to make a ruling based on the record. So the court accepted the waiver. And then the brief page 2, are you talking about on July 6, 2017, responding to waive his right to petition for discharge as well as? Yes. And then they cite a page? They cite to the record? Yes. All right. So that's your position that they have acknowledged? It wasn't a valid or a permanent waiver? Right. And certainly they did not challenge the waiver on appeal as being insufficient. Isn't the purpose of the statute for the court to look at the confinement that we hear on an annual basis? If it's necessary to do so. If it's requested to do so, then yes. But they did not request. In fact, they affirmatively waived their right to that process. So explain again, what is the harm here? Give us the reason that the two respondents have been harmed by not accepting the waivers and not going forward with any finding by the trial judge. Because all of the treatment they have been doing, all of the changes in professional knowledge that occurred over the years that are covered by the judgments in this appeal, now have a judgment that says there's no probable cause to believe based on those facts that the person should no longer be found a sexually violent person. And that is going to harm them and impair them in the future from getting discharged because they will not be able to rely upon all of those facts as something that could lead to a probable cause determination. Well, I don't understand why they can't rely on those. I mean, a medical professional is going to look at all of the years of commitment if he or she were to say at some point this person should be conditionally released. And it's based on my review of everything, isn't it? It would be based on their review of everything, but the finding of probable cause would have to come from something that hadn't already had a judgment under Stanbridge. Because the Stanbridge caught up, you know, they said, look, you have a jury trial, a bench trial, that is the point where you draw the line. And you say you have to have changes since then to show that they're no longer a sexually violent person. So the question is necessarily limited by the judgment being in effect. So sending them back for a hearing, remanding them back for a hearing, that doesn't cure this? No. Why not? Because they want to waive their right to a hearing so that there's no judgment at all. Whose they? Sorry, Mr. Podkalski and Mr. Butler. Yes. They don't. They're waiving their right to a hearing. They do not want to have a hearing or a judgment entered because they're not contesting their commitment. And aren't they also essentially then not contesting that there's no longer probable cause, that they're no longer a sexually dangerous person? And couldn't the Attorney General argue that again and again at some future point, that he affirmatively waived that there was any change when he did this in 2017? Can't they argue that anyway? I think there would be certainly an issue of admissibility about whether that would be admissible during a trial. But I don't think it rises to the same as having the ability to argue. The trial court found that there was no probable cause. It's even stronger. The trial court determined that. Does he have standing to challenges here and now because he's not suffering from the injury you're talking about? Yes, because the judgment has been entered. And this is the only time to appeal that judgment. But doesn't the injury have to be palpable and felt? And so until he is at the point that he needs a discharge hearing, he has not suffered an injury. There are a number of cases that would suggest perhaps there's no standing here. He hasn't been palpably injured. He has had a judgment. But how has he been injured? Because he hasn't been prohibited from arguing any of these things that you're asking he should be allowed to argue in the future. See, that's the key to the case. The reason it's the key to the case is because let's assume that we believe everything you're saying, okay, that the process should be as you say it should be. The problem with all that is that might be error, but it doesn't seem that that would be reversible error because there's no damage to your client. But damage comes from the judgment and the very existence of the judgment. Well, I know you're arguing that, but I know of no case that ever said such a thing. Well, and I know many cases in similar situations that have done exactly the opposite. You see, here anybody can argue anything, but as far as the facts of the case, your clients did not provide any medical information. Nobody did here. So that's not an issue. What you're saying is somehow you're prejudiced or you're injured, but there is no showing of such a thing. Well, that judgment exists now. It is a hurdle. It exists, but I can't see how it could be considered prejudicial in any way. It's prejudicial because it sets up a hurdle for him to overcome. What is that hurdle? That he has to show facts that don't include the 2015 through 2017 facts to get discharged. Well, I don't think that that's the case. I don't think that that's the case. He has to show that he's not a repeat offender, that somehow he's not a dangerous person anymore. He's not going to be a repeat offender. That's what has to be proven. That's what the bottom line is. And under Spambridge, the best types of things they can rely on are changes in the person through treatment, changes in the professional knowledge, and all the changes that occur. Yeah, I mean, he'd be able to bring all of that out if he ever had that in his favor. He'd be able to bring that out because annually these things could be brought before the court. So I don't see how you could contend that there is some kind of prejudice or some kind of damage or some kind of injury here that would make this reversible error. Mr. Johnson, we're going to give you some more time, but I think your argument is that he has been damaged because this particular judgment is now on record that as of 2017 there was no probable cause to believe that he was no longer a sexually dangerous person, and that can be used against him. Yes. In the future, though. In the future. Well, and it will be used against him because that's what the Attorney General and the trial court said that they wanted that judgment for. But can't they also argue? Let's assume we agreed with you that once somebody waives, affirmatively waives the right to a petition for discharge, that at a hearing in the future, the Attorney General would be as equally able or allowed to argue that he acknowledged just last year in his waiver that he had no basis to petition for discharge. Can't they argue that? No, because that's not what he acknowledged. He simply waived his right to petition. Okay. So what did he do by waiving his right to a petition? He gave up the opportunity to challenge it at that time. But under the statute, isn't, as Justice Gordon, I think, mentioned earlier, that every year, in order to continually detain him, courts can't just say, well, he waived his petition, so everything's fine. Well, isn't that kind of what the judge was troubled with, that he felt, or she, whoever it was, they felt that they can't just do nothing and have a person detained for another year. Just because that person says, I don't want a hearing this year. That is what the judge was concerned with. Okay. But the statute in this case does not provide for time limits on the commitment. The commitment continues until there's a judgment that the person is no longer a sexually violent person. But doesn't the state have that burden, though, also, that they have to annually have a determination made? No. They don't? No. Let me ask you this. During the prior objections and the motions, weren't you asked, do you agree with the statement today that under the Sexually Violent Persons Commitment Act, the state bears the burden of proving annually that the respondent's continued commitment is justified? And you said yes. So I think since that time, there was another decision from this court. Actually, I think it was Rendon that said that there is no burden on the state to prove that there's no probable cause in a discharge proceeding. Now, certainly there's a burden. But the question was also as to annually. Isn't that their responsibility, annually, to make that, to bring that to the court's attention? Yes. That is annually a requirement to bring it to the court's attention, but there's no requirement to have that judgment or determination made by the court. And the exception to that is if there's an affirmative waiver. And your complaint is this judgment has harmed him today, that there's some prejudice today, so that we should reverse any judgment that the court has. Yes. All right. Well, we're going to give you time for rebuttal. I think we're going to have to hear from Mr. McLeish now. Thank you. All right. Good morning, Mr. McLeish. Good morning, Your Honors. May it please the Court. Counsel. I'm Assistant Attorney General Brian McLeish. So I want to begin with, I think the alleged harm is that the state is going to make a bad legal argument in the future. And that is, we actually disagree that that's what the AG's argument, or that's what the Assistant Attorney General argued below. In any event, this judgment cannot be used for any kind of issue or claim preclusion. It cannot be used against the respondents in any way. And I can't promise that the state won't make a bad argument in the future. But if the state does make a bad argument in the future, then the court can reject it, either the trial court or the appellate court or the Supreme Court. And so – But didn't the Attorney General in the lower court say that the reason they needed this was so that they could use it in the future? No. So the block quote in the appellant's brief on pages 6 and 7, it basically echoes what the trial court's concern is. And that was, you know, listen, 2015, 2016, 2017, there's been no finding of no probable cause here. And we're a little worried that if there's a waiver here, we're going to be going on four-plus years with no finding of no probable cause. And there is no due process right to a finding of probable cause every year. There's no due process right to an annual reexamination. But at some point the judge – Well, there's a statutory process. There's a statutory right. Absolutely, yes. And I think that due process enters into the whole picture when you think about committing someone indefinitely based on a commitment proceeding. Absolutely. And I think that was the trial court's concern below and why it entered an order. And in our position – Can I interrupt you for a second? Yes, Charlie. I want to get back to how this all started. All right. So these matters were basically continued because of the prior objections that were raised. So when they were initially raised at each stage, what was the order that was entered? I know they were continued, but were they continued for further hearing, or what was the trial court's order in those regards? For the 2015 and 2016? Right. Yes, as far as I know, those were continued for further hearing. And that is actually common. No, I'm not questioning. I just want to know. So the court entered these, they continued them for further hearing or disposition? Yes, Your Honor. Okay. And so our position certainly is that the state cannot say all your change has to be in this year because there's been a finding of no probable cause. That's not our position in this court, and it shouldn't be our position in the trial court, and if it is, that should be rejected. I'm not sure I pulled that out of Rendon either, or Rendon, whatever the case is. Correct, Your Honor. There has to be some change, but the change doesn't all have to come in the last year. And regardless, that year doesn't come from a finding of no probable cause. The statute provides there has to be some change since the most recent periodic reexamination. So, you know, there has to be some change since that reexamination, and then the trial court can look at everything, his entire history. Well, is that the problem? This language is maybe confusing or ambiguous, that what you just read? The statute? Well, what you just read, that there has to be some change since the last examination. Counsel is arguing that that in itself suggests that, you know, you really can't go back and that he won't be entitled to any hearing unless he's able to show that since that last hearing, there's been a change, and yet if there's a continual judgment entered every year, there really hasn't been a change. Well, there's always a change. If nothing else, a respondent has gotten a year older, and we know that that matters. So the question is whether there has been enough of a change such that the person is no longer sexually violent, and that's the real answer. So the reason for the change language in the statute, I think, is, you know, if there's been a finding of no probable cause and the respondent is 33 years old, and in the next year the respondent doesn't go to treatment, doesn't do anything, and then petitions for discharge again, then the court doesn't have to hold a probable cause hearing because there's, you know, we've already. . . There hasn't been a change. Right. There hasn't been a change. But it does very little work, the change language, as this court has stated in Rendon and as Sandbridge stated. You know, the change language, I think, is wrong. I think at least perhaps in the trial court got too fixated on that. But in any event, there has been no harm done to respondents. And unless the state makes a bad argument, even if the state makes a bad argument in the future, there's still no harm unless, you know, the trial court agrees with it and then this court agrees with it and then the Supreme Court agrees with it. And that's not going to happen. Let me ask a question. What's the harm in simply not filing a motion or having a probable cause hearing if a person waives their petition for discharge? Well, there are a couple harms. So one is the one that we've already discussed, which is eventually, you know, the court should probably do some investigating, especially because, you know, and there's, you know, that's not every year necessarily, based on the Constitution, on the statute of this, but the court doesn't have to do an independent investigation if he waives every year. But at some point the trial court should have discretion to look into this if a respondent is waiving year after year. Well, couldn't he be brought in? Why shouldn't the respondents here be able to affirmatively waive their right to any petition for discharge? Why shouldn't they have that right? Why should you be controlling it or the state be controlling it? Why shouldn't the respondent be able to? Now, personally, I think if that's going to occur, it shouldn't occur on a piece of paper. I don't know that that's an affirmative acknowledgment. I don't know what the words affirmative mean. We haven't had the parties brief us. But I'm not certain that, you know, an attorney's statement that I have a waiver of my client here, that that's an affirmative acknowledgment that he's giving up his right to a petition for discharge. But why shouldn't he be allowed to affirmatively waive his right to a petition for discharge and not have this, you know, hearing or finding judgment like the court entered here? So I think there are two questions there. The first is, why shouldn't he be allowed to petition for discharge? And the answer to that is, he should be allowed to petition or waive his right to petition for discharge and is allowed to waive his right to petition for discharge. And if he affirmatively does so, why should the state be allowed to then ask the court for further findings? He's already acknowledged that he doesn't want a petition for discharge this year, 2017. Right. So the Constitution requires that a person be committed only so long as he remains a sexually violent person. And that waiver is not preclusive, you know, it is not a conclusive finding that he remains a sexually violent person. So you could have a, especially when you're talking about, by definition, people with a mental disorder could be waiving their right to petition for discharge, even though they are no longer sexually violent. But they're already examined, right? And that is provided to the court. And the statute does provide that the court, in some instances, can conduct its own hearing. Yes, Your Honor. And that's actually another point, that not only can the court conduct its own hearing, it can order independent reexamination at any time. So the statute already provides for some judicial independence. The court is not bound by the parties in these cases, and for good reason. Because, you know, the court has a role in making sure that people who aren't STPs are not being committed. And that is, I think, the best answer to your question, why someone can't, why someone, even if he has waived his right to petition for discharge, that waiver should not be given 100% binding effect. The trial court should still have some discretion to evaluate on its own. Is there a hole in this statute? Is there something that is missing? Yes, what you're supposed to do after a waiver. That's what's missing. How about this? How about the fact that, you know, a person can execute a waiver without legal representation? And that's the other question. So we actually, pardon me, Your Honor. Before we get into that, I mean, how could a person with mental health issues sign a waiver without legal representation? What kind of waiver would that be? That is unclear. And that question is not before the court at this moment, because we actually do agree that there was an affirmative waiver here. In this case. In this case. But the way the statute reads, it appears that anybody could sign a waiver, and a person with mental health issues, what good would that waiver be? And that is all the more reason to allow the trial court some discretion, even where there has been, you know, some kind of waiver, whether it's a piece of paper. How can you stand here and say there was an affirmative waiver? So our reading of the statute actually is the same as respondents, and that is an affirmative waiver is in contrast to either filing a petition for discharge or doing nothing. And so I think the work that affirmative does there is in distinction to just doing nothing, and sometimes that can be construed as a waiver. In many cases, if you don't make an argument, go ahead, Your Honor. Well, I'm saying if you don't have this person in front of you, how can a court actually conclude that there was an affirmative waiver of a right to petition for discharge? How can he do that based on, and this is not meant as any disrespect to the attorney record, but how can a court say that there was an affirmative waiver of a right to petition for discharge when neither one of these gentlemen was brought before the court to say, I understand all of these things that I'm giving up. There's six of them in the waiver of right, and he's never asked this. He's never acknowledged this. And I mean, I guess I haven't seen exactly what was said during that particular little, you know. Well, I mean, you'll agree that a waiver, you know, a court doesn't have to accept a waiver. Yes, Your Honor, and it is messy, and the statute doesn't outline any sort of procedures, any sort of admonitions that the trial court has to give. And, you know. Well, what if we held in this case that we're going to remand this for Mr. Podolsky and the other respondent, Mr. Butler, that they be brought into court and then have the right to affirmatively waive the petition for discharge, and then the court can determine whether, based on that waiver, he needs to do anything further. What's the problem with a remand for that purpose? Vacate or not even vacate, but necessarily send this back for an affirmative waiver in open court where the court can examine these respondents to determine if, in fact, they affirmatively waived their right, if they understood what they were doing. I mean, I don't see how a court makes this determination without. I don't think we'd allow a jury waiver with the defendant not present and the lawyer says, here's a jury waiver, Judge. Yes, Your Honor, and certainly some rights can't just be waived by an attorney, and some can't be waived by an attorney. The defendant has to be present, and some can be. And there is no case law on which kind of right this is. Well, if somebody's going to be held for another year until the next examination, I would think it's a little significant what their waiver is. Agreed. Or you could have what happened here, which is the trial court just makes the finding of no probable cause. So that's why a remand, though. But then the respondents are not getting their opportunity under the statute to affirmatively waive. They have that right. Do they not? They have a statutory. The statute gives them that right to affirmatively waive. However, there is zero harm from the trial court just making the finding instead. And there's, you know, the trial court has discretion to accept or, well, the trial court has discretion to simply enforce the waiver as it is and make a conclusive finding based on that, or to do some independent research, namely reading the reexamination reports. And that's what happened here. So a remand might be appropriate in another situation, especially if the trial court hadn't made that finding. But because there's no harm to the respondents going forward, a remand here would just be an unnecessary use of judicial resources. Isn't there a standing issue? Your argument in your brief is essentially no harm, no foul, no prejudice. So if there isn't a palpable injury, is there a standing problem with this case? Do these respondents have standing to argue that they have been, well, have they been injured? If you're saying no, they haven't been injured because the court entered a finding that would keep them restrained for another period of time until there's a change. Our position is that, yes, they have the right to argue that they haven't been injured, and no, they haven't been injured. So we don't think that there's a standing issue. However, and actually we're not relying heavily on prejudice as a, you know, this is a harmless error. Our point is that the trial court should have this discretion because in no case can there be any harm to the respondents. So, you know, all the more reason, the only possible outcome here, there are two possible outcomes. One is the exact same thing that would happen if there was a waiver, which is they stay committed another year, and when it gets to the next probable cause hearing, you use the statute, not any argument, any erroneous argument that any party has made below. You look to the statute, which has nothing to do with whether there's been a finding with no probable cause. So that's one outcome, and the more likely outcome. The other possible outcome is the trial court looks at the reexamination reports and says, wait a minute, I think there might be probable cause here, and now I'm going to have some further proceedings to determine whether there is and whether we need to have a jury hearing. So is there any harm then vacating the orders then, if we follow that argument? The potential harm is, so if we vacate the order, then I think it's very likely that the waiver will then be litigated. And if this Court holds that the trial court can never make a finding. And you're talking about the waiver, you're talking about the last waiver that was submitted. Yes. Yes, the last waiver, but the last waiver covered several years. Right. So I think the potential harm, not necessarily in this case, but in future cases, is this Court has identified the messiness surrounding waiver. The statute doesn't outline any procedures for what the trial court has to do, any admonitions that need to be made, and by saying that the trial court can't make a finding of no probable cause when there has been a waiver, it is inviting litigation of that messiness, even when there's no reason to litigate it because there's no probable cause. So going along with the messiness issue, one of the things that was concerning to me with regards to the waiver is an examination report. The psychologist on the bottom of his notice was his notification of rights. He says, he, meaning Mr. Poklowski, retained his right to petition the court for discharges indicated by this writer's, meaning the psychologist's, signature on the waiver of right petition form. So the psychologist signs the form, but Mr. Poklowski doesn't sign the form. And then the psychologist is basically indicating, okay, so he's waived his rights. Well, I think the psychologist said he wasn't waiving his rights. Is that correct? Right. So in that case, I think it's essentially a nullity, which is fine because, you know, the statute provides for what happens if the respondent doesn't affirmatively waive his rights.  Then we would have gone on that track where there was just a hearing, which involved a review of the reexamination reports and then counsel's office. But I think this highlights an issue with regards to the sloppiness of how these forms are processed and utilized. And that's, again, all the more reason for the trial courts not to rely on these waivers in every case and to allow the trial court some discretion, you know, regardless of whether there have been, you know, to allow the trial court the discretion to decide whether to then make a finding of no probable cause. All right. Anything further? No, thank you, Your Honor. All right. Thank you, Mr. McLeish. Mr. Johnson? You did ask the trial judge to allow the waiver and not enter a finding, didn't you? Yes. All right. Now, with respect to the State's argument that there's a need for discretion in the trial court to hold the hearing in spite of the waiver. Well, that the court has the discretion. Do you think the court abused its discretion here? No, I don't think the court had discretion. Okay. Because there's no need to interpret there being discretion on the court because the person is represented by counsel, as is their right under Section 25. It's not a situation in the cases at bar where a person is unrepresented, although, admittedly, that would be possible. If a person is suffering from a mental disease or defect such that that condition precludes that person from not reoffending, how can we have this kind of affirmative waiver in these cases? Well, there's been no, in the record in either one of these cases, there's been no bona fide doubt about the defendant's or the respondent's fitness to do that. And in any event, the in re-commitment of weekly decision from 2011 provided that there was no right under the Sexually Violent Persons Commitment Act that a person be fit to stand trial. And part of that rationale was because the mental disorder that predisposes them to commit acts of violence would not necessarily be one that, although in some cases it could. Yes. It certainly could. Okay. And I think that whether there's harm in this case certainly depends on the interpretation of the statute. And the idea that there will be a bad argument in the future that's accepted, that's what was, that argument was already made. So it's not a possibility. If there's nothing further, we'd ask that the court vacate the finding and judgment of the trial court. Thank you. Thank you. Thank you both. The attorney's case was well argued, well briefed. We will take it under advisement. We're also going to recess briefly to switch panels for the next case.